IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| ANGELA J. SMITH, et al. | * | |
| | * | |
| v. | * | Civil No. JFM-13-306 |
| | * | |
| ABC TRAINING CENTER | * | |
| OF MARYLAND, INC., et al. | * | |
| | * | |
| | ****** | |

**MEMORANDUM**

On January 29, 2013, twenty-two individuals filed a five-count complaint against

defendant ABC Training Center of Maryland, Inc., which operated several vocational schools

under the trade name American Career Institute ("ACI"), and several of its former executives

(the "Individual Defendants") for alleged violations of the Worker Adjustment and Retraining

Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq.*, the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. § 201 *et seq.*, the Employee Retirement Income Security Act of 1974, as

amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29

U.S.C. § 1161, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §

3–401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code

Ann., Lab. & Empl. § 3–501 *et seq.*  Plaintiffs, who are former employees of ACI, allege that

they suffered damages when ACI shuttered its schools in January 2013 without prior notice.

Plaintiffs further allege that ACI has not fully compensated them for the time they worked before

ACI's closure.  Defendants have moved to dismiss each count of plaintiffs' complaint or, in the

alternative, for summary judgment on each count.  The issues have been fully briefed, and the

court has reviewed the pleadings and affidavits.  No oral argument is necessary.  *See* Local R.

105.6.  For the reasons set forth below, the motion will be granted in part and denied in part.

## BACKGROUND

ACI provided postsecondary vocational schooling to students on eight campuses in

Maryland and Massachusetts.   Until 2011 a student could matriculate at ACI even if the student

had not received a high school diploma or a General Educational Development ("GED")

certificate.  Students lacking a diploma or GED certificate could take a general skills assessment,

known as an Ability to Benefit ("ATB") test, and could matriculate at ACI upon achievement of

a sufficient score.  Those students could then obtain student financial assistance from the federal

government pursuant to Title IV of the Higher Education Act of 1965, as amended, Pub. L. No.

89-329, 79 Stat. 1219.

In December 2011, however, Congress enacted and the President signed the Consolidated

Appropriations Act of 2012, Pub. L. No. 112-74, 125 Stat. 786.  Pursuant to this statute, students

who first enrolled in postsecondary education after July 1, 2012, and who lacked a high school

diploma or GED certificate were no longer eligible for Title IV funds.  Thus, students who

passed the ATB test and matriculated at ACI after July 1, 2012, could not receive federal

assistance to finance their education.  Without federal financial aid, these students could no

longer enroll at ACI.  Because a significant number of ACI students were admitted through the

ATB program, this statute had a significant effect on ACI's finances.

ACI had a "financially-difficult third quarter" in 2012, and in November of that year

Andree Fontaine, ACI's chief executive officer, asked ACI's bank to increase its borrowing base

from 60% to 75%.  (Fontaine Aff. ¶ 5, ECF No. 17-2.)  Around the same time ACI's

management furloughed themselves for five days, required non-management staff to take three

furlough days, and planned to shutter the ACI campus in Columbia, Maryland.  ACI also began

to restructure and to implement various reforms that were intended to alleviate some of the

financial pressure.

ACI presented its restructuring plan to its bank on November 8, 2012, and maintained

contact with bank officials in subsequent weeks.  On December 31, 2012, however, the bank

notified ACI's management that it had frozen ACI's operating account and would oversee the

approval of all payments to third parties.  The bank then asked ACI to prepare two alternative

proposals: a thirteen-week "going forward" plan centered on restructuring the organization and a

"wind-down" plan in the event that ACI had to board up its campuses.

ACI presented these plans to the bank on the morning of January 8, 2013.  The bank then

requested that certain ACI executives personally guarantee the company's obligations.  When

those executives refused, the bank notified ACI managers that it intended to sweep ACI's

accounts of all available funds.  The next day ACI notified its employees that it would be

shuttering each of its campuses effective immediately.  ACI informed the employees that their

health insurance plan would be discontinued as of January 11, 2013.

Because the bank had swept ACI's accounts of all funds, ACI had trouble making

payroll.  All ACI employees received bi-weekly paychecks, but the employees were divided into

two groups for payroll purposes, and the pay periods for the two groups were staggered during

alternating weeks.  One group, referred to here as the Adjunct Employees,[1] was paid two weeks

in arrears.  The Adjunct Employees received a timely paycheck on January 4, 2013, that included

---

[1]      The Adjunct Employees were:  Kenya Ross-Beatty, Terry Richardson, Ashley Jacquette, Elizabeth Banks, Valerie Lievers, and Samara Simms.

all time worked through December 22, 2012.  A second group, the Staff Employees,[2] was paid one week in arrears.  The Staff Employees received a timely paycheck on January 11, 2013— three days after ACI's accounts were swept and the company announced its closure—for all time worked through January 5.  ACI's payroll contractor covered the January 11 payroll, perhaps without knowledge that ACI had closed, and subsequently sought to cancel those checks.  When ACI refused, the Staff Employees were permitted to keep the checks, but the payroll contractor ended its relationship with ACI.

The Adjunct Employees' next bi-weekly paycheck, which would have covered time worked through January 5, should have been paid on January 18, 2013.  The Staff Employees should have received their final paychecks (including all time worked through ACI's closure on January 9 as well as any owed vacation time and overtime compensation) one week later, and the Adjunct Employees should have received their final paycheck on February 1.[3]  Those checks, however, were not timely sent.  Rather, in the days and weeks following ACI's closure, two ACI executives—Chief Executive Officer Andree Fontaine and Executive Vice President Geordie Mosbarger, who together owned 72% of ACI's parent company—each borrowed $130,000 against their home equity to cover the final payroll.  On January 30, 2013, ACI retained a new payroll contractor, Rust Consulting, to process these final paychecks.

The Adjunct Employees' final paychecks included the total number of hours that each employee was scheduled to work between December 23 and January 9, and the Staff Employees were paid for twenty-four hours of work between January 6 and January 9 (regardless of the

---

[2]     The Staff Employees were:  Angela J. Smith, Eulisa Thomas, Tjwana Dixon, Jeremy Lloyd, Karen Morton, Ameisha Gathers, Tommy Calloway IV, Keona Reed, Deedra Carter, Kanetra Childs, Chaminda Wright, Stacey Lightfoot-Morgan, Christen Perfetta-Drgos, Earl Blanding III, and Cheri Vaughan.

[3]     Adjunct Employees apparently were not eligible to accrue vacation time.

actual time they worked) and 2.46 hours of accrued vacation.[4]  Rust Consulting purportedly printed the final paychecks on February 2, 2013, and mailed the checks to all employees on February 4.  Several plaintiffs dispute this assertion, arguing that the checks were dated February 4 and were not received until February 8 at the earliest.  A few plaintiffs claim that they received their checks in late February or even March.[5]

Plaintiffs filed this suit on January 29, 2013—several days before Rust Consulting purportedly mailed the final paychecks.  The complaint includes five counts for violations of the WARN Act, FLSA, MWHL, MWPCL, and COBRA.  On April 1, 2013, ACI and defendants Andree Fontaine, Geordie Mosbarger, Robert Payne, and Mason Folcarelli moved to dismiss the complaint or, in the alternative, for summary judgment on each count.  Defendant George Lepke, who retained separate counsel, filed a substantively identical motion on April 8, 2013.  Plaintiffs opposed the motions on May 17, 2013, and defendants filed their reply memoranda on June 3, 2013.  Plaintiffs attached affidavits to their May 17 opposition memorandum, but several of those affidavits were not executed.  Plaintiffs supplemented their opposition memorandum with executed copies of these affidavits on June 10, 2013.  The supplement did not include any legal arguments.  Defendants objected to the supplement and filed a motion to strike the supplemental affidavits or, in the alternative, for leave to file a surreply.  The court granted leave to file a surreply.

---

[4]      Because Mr. Blanding was a part-time employee, he was not eligible for and did not receive compensation for accrued vacation.

[5]      One plaintiff, Keona Reed, apparently began her employment at ACI on December 26, 2012.  ACI now claims that its corporate office never received the requisite paperwork from Ms. Reed when she joined the firm.  As a result, her check was not issued for at least several weeks after Rust Consulting mailed the other paychecks.

**STANDARD**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  The plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions."  *Id.* (internal quotation marks and alterations omitted).  It is not sufficient that the well-pleaded facts create "the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

6

true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A motion for summary judgment cannot be defeated simply by noting the presence of any factual dispute. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

**ANALYSIS**

Five counts comprise the complaint.  Defendants have moved to dismiss the complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) and also advance various arguments supporting dismissal of the individual counts.  In the event the court declines to dismiss the action, defendants ask this court to review the record and to grant summary judgment in their favor.  Because defendants raise numerous defenses with respect to each count of the complaint, the court addresses each count in turn.

## I.  Count One: WARN Act

Plaintiffs first allege that defendants violated the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq.*, when they shuttered ACI and terminated plaintiffs' employment without advance warning.  The WARN Act provides that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice" of the closing or layoff to the affected employees or their representative.  29 U.S.C. § 2102(a).  The WARN Act is not absolute, however, and ACI argues that it is exempt from the WARN Act's requirements because the closure of ACI was due to "business circumstances that were not reasonably foreseeable as of the time that notice would have been required."  *See* 29 U.S.C. § 2102(b)(2)(A).  The Individual Defendants also argue that they cannot be liable for WARN Act violations because they do not fall within the statutory definition of "employers."  Because the second argument is more persuasive, it is addressed first.

### A.  Individual Liability for WARN Act Violations

The WARN Act, by its own terms, applies only to "employers."  Section 2101(a)(1) defines an employer as a "business enterprise" that employs 100 or more employees.  The Individual Defendants are not a business enterprise and therefore cannot be liable for ACI's alleged failure to comply with the WARN Act, even if those individuals were executives and

managers responsible for ACI's abrupt closure.  *See Lewis v. Textron Auto. Co.*, 935 F. Supp. 68,

71 (D.N.H. 1996) (citing *Cruz v. Robert Abbey, Inc.*, 779 F. Supp. 605, 609 (E.D.N.Y. 1991);

*Solberg v. Inline Corp.*, 740 F. Supp. 680, 685 (D. Minn. 1990)).  Plaintiffs urge this court to

ignore the term enterprise as "irrelevant."  (Pl.'s Opp. at 18, ECF No. 28-3.)  However tempting

it may be, at times, to heed plaintiffs' advice and rewrite statutes, this court cannot simply

disregard the unambiguous statutory language that Congress chose to use.  Plaintiffs also fail to

cite any cases in which individuals have been held liable for corporate WARN Act violations.

Accordingly, the Individual Defendants will be dismissed from count one.

### B.  Unforeseeable Business Circumstances

ACI maintains that it is entitled to summary judgment on the WARN Act claim because

the plaintiffs lost their jobs due to unforeseeable business circumstances.  An employer that is

otherwise liable for a WARN Act violation will be excused from the WARN Act's notice

requirements if the business closure was attributable to "business circumstances that were not

reasonably foreseeable as of the time that notice would have been required."  *See* 29 U.S.C. §

2102(b)(2)(A).  In those circumstances the employer must provide the affected employees with

"as much notice as is practicable" as well as "a brief statement of the basis for reducing the

notification period."  § 2102(b)(3).

The Department of Labor has promulgated regulations that provide guidance on the

question of foreseeability.  According to its interpretation of § 2102(b), business circumstances

are not reasonably foreseeable if "the business circumstance is caused by some sudden, dramatic,

and unexpected action or condition outside the employer's control."  20 C.F.R. § 639.9(b).

Examples provided by the Department of Labor include the "sudden and unexpected termination

of a major contract" by a business partner, "an unanticipated and dramatic major economic

downturn," or the abrupt government closure of an employment site.  *Id.*; *see also Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 641–43 (4th Cir. 1997) (affirming summary judgment in favor of employer where closure was due to unanticipated failure to renew sales contract with the employer's sole customer).

The WARN Act required ACI to provide its employees with notice of its impending closure on November 10—sixty days before ACI shuttered on January 9—or as soon thereafter as such notice became "practicable."  ACI therefore is entitled to summary judgment only if it establishes that no reasonable trier of fact could conclude that ACI's inability to increase its borrowing base was foreseeable prior to January 9.  ACI has not satisfied that burden.  Based on the limited factual record currently available to the court, a reasonable factfinder could conclude that ACI's financial predicament was foreseeable in December 2011 when Congress enacted the Consolidated Appropriations Act of 2012, which rendered future Ability-To-Benefit students ineligible for federal financial aid.  ACI had a "financially-difficult third quarter" in 2012, after those statutory reforms took effect, and allegedly laid off some employees while furloughing others.  To be sure, ACI's bank continued to negotiate with ACI until January 8, when the bank sought personal guarantees of ACI's obligations before informing ACI that its accounts would be swept.  A reasonable factfinder nevertheless might conclude that it was foreseeable to ACI in the third quarter of 2012 that its bank would refuse to increase its borrowing base, as ACI's business model ostensibly relied upon the enrollment of Ability-To-Benefit students who, for all practical purposes, were no longer able to enroll.  The "business circumstances" that caused ACI's deteriorating financial condition were not, as a matter of law, tantamount to the "sudden, dramatic, and unexpected" termination of a major contract or abrupt government closure of an

employment site—the examples provided in the Department of Labor regulations.  ACI's motion

for summary judgment on the WARN Act claim therefore will be denied.

## II.      Counts Two and Three: FLSA and MWHL

In counts two and three plaintiffs[6] seek damages under the Fair Labor Standards Act of

1938 ("FLSA") and the Maryland Wage and Hour Law ("MWHL") for defendants' alleged

failure to provide plaintiffs with overtime compensation for hours that plaintiffs worked in

excess of the weekly forty-hour threshold established in those statutes.  To encourage employers

to comply with a nationwide maximum-hours standard of forty hours per week, the FLSA

generally requires employers to compensate employees on a time-and-a-half basis for all hours

worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  The MWHL imposes a similar

requirement on employers in this state.  *See* Md. Code Ann., Lab. & Empl. §§ 3–415, 3–420.

Plaintiffs allege that ACI violated these provisions because plaintiffs "worked many overtime

hours" but never received compensation from ACI for those hours.  (Compl. §§ 73, 80, ECF No.

1.)

Defendants move to dismiss counts two and three or, in the alternative, for summary

judgment on those counts.  They assert numerous defenses.  First, the Individual Defendants

argue that they should be dismissed from counts two and three because they were not plaintiffs'

"employers" as that term is statutorily defined.  Second, defendants argue that plaintiffs fall

within the statutory exemptions for teachers and administrative professionals.  Third, defendants

contend that plaintiffs are equitably estopped from asserting FLSA and MWHL claims because

they never reported overtime while working at ACI and have never before complained about

---

[6]      Mr. Blanding does not assert claims under the FLSA or the MWHL because, as a part-time employee, he was not eligible for overtime compensation.  Mr. Blanding therefore is excluded from all references to "plaintiffs" in this section.

ACI's failure to pay overtime.  And fourth, defendants argue that there is no genuine dispute

concerning whether plaintiffs worked overtime.  These arguments are addressed in turn.

A.  Individual Defendants

The Individual Defendants seek to be dismissed from counts two and three on the basis

that they were not plaintiffs' employers and therefore cannot be liable under the FLSA and

MWHL.  Section 207(a)(1) generally requires an employer to compensate an employee on a

time-and-a-half basis for all hours worked in excess of forty hours per week.  The definitions of

the statutory terms "employer" and "employee" are provided in section 203:  an employee is

defined as "any individual employed by an employer," and an employer is defined as "any

person acting directly or indirectly in the interest of an employer in relation to an employee."  29

U.S.C. § 203(d), (e).  The statute further provides that the verb "'[e]mploy' includes to suffer or

permit to work."  § 203(g).  The MWHL does not define the terms "employee" or "employ," but

its definition of "employer" is nearly identical to the FLSA definition:  "'Employer' includes a

person who acts directly or indirectly in the interest of another employer with an employee."

Md. Code Ann., Lab. & Empl. § 3–401(b).

It follows inexorably from this statutory text that individuals such as corporate officers

may be personally liable under the FLSA if the individual acts "directly or indirectly in the

interest of an employer."  *See Brock v. Hamad*, 867 F.2d 804, 808 n.6 (4th Cir. 1989); *Pearson v.

Prof'l 50 States Prot., LLC*, No. 09-3232, 2010 WL 4225533, at *3 (D. Md. Oct. 26, 2010).  To

determine whether there existed an employer–employee relationship within the scope of the

FLSA, courts consider the "economic realities of the relationship between the worker and the

putative employer."  *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006)

(internal quotation marks omitted).  "Where an individual exercises control over the nature and

12

structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the [FLSA] and is subject to liability." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009).  Because the MWHL is the state analogue to the FLSA, this same "economic realities" test is used to determine the applicability of that statute. *See Iraheta v. Lam Yuen, LLC*, No. 12-1426, 2012 WL 5995689, at *4 (D. Md. Nov. 29, 2012); *Caseres v. S&R Mgmt. Co.*, No. 12-1358, 2012 WL 5250561, at *4 (D. Md. Oct. 24, 2012).

In their complaint plaintiffs allege that each Individual Defendant was plaintiffs' employer for purposes of the FLSA and MWHL.  (Compl. §§ 35, 37, 39, 41, 43.)  Although these conclusory allegations warrant little deference, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), plaintiffs' allegations nevertheless are sufficient to survive a motion to dismiss.  Insofar as plaintiffs have stated plausible FLSA and MWHL claims against ACI, the claims against the Individual Defendants are also plausible.  The Individual Defendants are alleged to be managers and executives who exerted significant control over the operations of ACI: the chief executive officer, executive vice president, chief operating officer, chief financial officer, and head of career services.  It is certainly plausible that the Individual Defendants controlled plaintiffs' hours, either directly or indirectly, and that the Individual Defendants controlled the structure of the employment relationship.

The Individual Defendants invite the court to pierce the pleadings and to examine the evidence.  They have submitted numerous affidavits addressing the level of control each defendant exerted over plaintiffs, and in the event this court denies the motion to dismiss, the Individual Defendants seek summary judgment on the issue of their individual liability under the FLSA and MWHL.  Geordie Mosbarger, for example, declares that he "did not supervise or control any Plaintiff's (or other employee's) work schedule, responsibilities, or conditions of

13

employment." (Mosbarger Aff. ¶ 5, ECF No. 17-4.)  Other defendants make substantially similar declarations.

Yet the plaintiffs refute these declarations in their own affidavits, albeit in equally vague terms.  Angela Smith, for example, declares that all five Individual Defendants were "instrumental in determining what employees got paid and how they got paid." (Smith Aff. ¶ 11, ECF No. 28-5.)  She alleges that Robert Payne "often conducted meetings with myself and others to make changes to the schedules of the education department." (*Id.* ¶ 14.)  The affidavits of other plaintiffs are replete with similar declarations concerning other defendants.

A determination whether the Individual Defendants are personally liable for alleged violations of the FLSA and MWHL therefore would be premature.  The degree of control exerted by the Individual Defendants is necessarily a fact-intensive inquiry.  The trier of fact must consider factors such as the Individual Defendants' job descriptions, their financial interests in ACI and its parent company, and the managerial control that each Individual Defendant wielded with respect to plaintiffs' hours.  *See Pearson*, 2010 WL 4225533, at *3 (citing *Baystate Alt. Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998)).  The parties' conflicting versions of the scope of the Individual Defendants' control creates a genuine issue of material fact that cannot be resolved without discovery.

### B.  Statutory Exemptions

Defendants next argue that counts two and three must be dismissed because plaintiffs are exempt from the protections of the FLSA and MWHL.  The overtime compensation provision of the FLSA does not apply to any employee who is employed in a *bona fide* administrative or professional capacity, including academic administrative personnel and teachers in elementary or secondary schools.  29 U.S.C. § 213(a)(1); *see also* 29 C.F.R. § 541.204(a) (defining exempt

academic administrative personnel to include an employee earning at least $455 per week

"[w]hose primary duty is performing administrative functions directly related to academic

instruction or training in an educational establishment or department or subdivision thereof").

The exemption also includes "any employee with a primary duty of teaching, tutoring,

instructing or lecturing in the activity of imparting knowledge and who is employed and engaged

in this activity as a teacher in an educational establishment."  29 C.F.R. § 541.303(a).  Included

in this exemption are teachers of skilled and semi-skilled trades and occupations.  § 541.303(b).

The MWHL includes similar exemptions.  *See* Md. Code Ann., Lab. & Empl. § 3–403(a)(1).

Although the current record suggests that some, if not all, plaintiffs were indeed exempt

employees, defendants' argument is premature.  Defendants have moved for dismissal of counts

two and three on the basis of the statutory exemptions; they do not presently seek summary

judgment on that basis.  A motion to dismiss filed under Rule 12(b)(6) cannot reach the merits of

an affirmative defense except in the "relatively rare circumstances" where facts sufficient to rule

on the affirmative defense clearly appear on the face of the complaint.  *Goodman v. Praxair,

Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  The statutory exemptions are affirmative defenses to an

FLSA claim, and the employer bears the burden of establishing the applicability of those

exemptions.  *In re Food Lion, Inc.*, 151 F.3d 1029, at *4 & n.9 (4th Cir. 1998); *Clark v. J.M.

Benson Co.*, 789 F.2d 282, 286 (4th Cir. 1986).  The applicability of the statutory exemptions

"requires an individualized determination into the actual work performed by that employee."  *See

Williams v. Md. Office Relocators*, 485 F. Supp. 2d 616, 619 (D. Md. 2007).  Because that

information is not clearly apparent from the face of the complaint, the applicability of those

exemptions cannot be adjudicated without examining evidence that is not presently before the

court.  Accordingly, the motion to dismiss on the basis of the statutory exemptions will be denied.

### C.  Equitable Estoppel

Defendants next contend that plaintiffs are equitably estopped from asserting claims for unpaid overtime because plaintiffs never requested overtime compensation before filing this suit and never submitted to ACI any paperwork indicating that they were owed overtime compensation, despite a company policy requiring them to do so.  Neither this court nor the Fourth Circuit, however, has held that an FLSA claimant may be estopped from pressing a claim to recover unpaid overtime compensation merely because the claimant did not comply with the employer's policies requiring regular reporting of overtime.  Rather, an FLSA claimant seeking unpaid overtime wages needs only to establish that the employer had either actual or constructive knowledge that the employee was performing overtime work.  *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996); *see also* 29 C.F.R. § 785.11.

Other courts ostensibly have applied the doctrine of equitable estoppel in FLSA overtime cases.  In a recent opinion the Sixth Circuit stated:  "Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time[,] the employer is not liable for non-payment if the employee fails to follow the established process.  When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA."  *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) (internal citations omitted).  Other circuits have adopted similar requirements.  *See Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972).

16

Other courts, however, have declined to permit an employer to invoke equitable estoppel as an affirmative defense to an FLSA claim for overtime compensation. *See, e.g.*, *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours."); *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1320 (S.D. Fla. 2005) ("[T]he doctrine of estoppel is not recognized under the FLSA. Federal courts have repeatedly rejected equitable estoppel as an affirmative defense to an FLSA claim, even where an employee is required, but fails[, to] record overtime hours worked." (internal citation omitted)). In *Caserta v. Home Lines Agency, Inc.*, Judge Friendly stated that the obligation to provide overtime compensation "is the employer's and it is absolute. [The employer] cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping and of appropriate payment[] to the employee." 273 F.2d 943, 946 (2d Cir. 1959) (internal citations omitted).

Furthermore, even the courts that recognize an equitable estoppel defense have held that the time-reporting requirement is not absolute. Those courts have disavowed the time-reporting requirement where the employee can establish that the employer had actual or constructive knowledge that the employee was working overtime—*i.e.*, where "'the employer knew or had reason to believe that the reported information was inaccurate.'" *Newton v. City of Henderson*, 47 F.3d 746, 748–49 (5th Cir. 1995) (quoting *Brumbelow*, 462 F.2d at 1327); *see also White*, 699 F.3d at 876–77.

This court therefore declines to hold that compliance with ACI's internal reporting requirements was a *sine qua non* for plaintiffs' FLSA overtime claims. To recover their unpaid overtime, plaintiffs must prove that they worked overtime within the limitations period, were

17

eligible to receive overtime compensation, were not compensated for the overtime that each

plaintiff worked, and that ACI had actual or constructive knowledge that they were working

overtime.  *See Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005).  Plaintiffs need

not allege or establish compliance with ACI's internal reporting requirements if they otherwise

can prove that ACI had knowledge of their overtime.

Under this standard the declarations in plaintiffs' affidavits are sufficient to survive

defendants' motion for summary judgment.  Although plaintiffs do not specify the dates on

which they worked unpaid overtime, they were not required to do so.  *See Chao*, 415 F.3d at

348–49 (citing *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973)).  Plaintiffs

submitted affidavits attesting that they are owed overtime compensation.  Although the affidavits

provide scant support for this broad allegation, defendants may elicit further details during

discovery.  If plaintiffs are able to establish that they worked unpaid overtime within the

limitations period, defendants may offer plaintiffs' completed time sheets as evidence that ACI

never had actual or constructive knowledge that plaintiffs were working overtime.  *See White v.

Washington Gas*, No. 03-3618, 2005 WL 544733, at *5 (D. Md. Mar. 4, 2005).  But ACI's

unsubstantiated allegation that plaintiffs failed to comply with the reporting requirements is not,

at this stage, dispositive of whether plaintiffs worked overtime or whether ACI had knowledge of

that overtime.

### D.  No Overtime Hours Worked

Defendants also argue that the court should enter summary judgment in their favor on

counts two and three because there is no genuine issue of material fact concerning whether

plaintiffs were owed overtime for hours worked before ACI shuttered.  That fact, however, is in

dispute.  In their affidavits plaintiffs declare that they often worked in excess of forty hours per

week but were not provided with overtime compensation.  Despite the vagueness and incertitude of plaintiffs' attestations, the court will not consider summary judgment until plaintiffs have been afforded adequate discovery.  Maryland law requires employers such as ACI to maintain employees' time sheets for at least three years, *see* Md. Code Ann., Lab. & Empl. § 3–424, and plaintiffs are entitled to request this information from ACI to confirm whether they worked more than forty hours in any given week.  Plaintiffs have properly filed an affidavit pursuant to Federal Rule of Civil Procedure 56(d) to delay summary judgment until they have received and reviewed the time sheets, and ACI's motion for summary judgment on counts two and three will be denied without prejudice.

### III.    Count Four: MWPCL

In count four plaintiffs allege violations of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3–501 *et seq.*  The MWPCL requires employers to pay employees at least once every two weeks or twice per month.  Md. Code Ann., Lab. & Empl. § 3–502(a)(1)(ii).  The statute further provides that when an employer terminates an employee, the wages due to that employee for work performed before the termination of employment must be paid on or before the date on which the employee would have been paid if the employment had not been terminated.  § 3–505(a).  Plaintiffs allege that their final paychecks were both untimely and deficient.  Without addressing the merits of plaintiffs' claims, defendants advance several bases for dismissal of count four or for summary judgment on that count.[7]

---

[7]    Defendants also argue that count four "could be dismissed" because terminated employees must bring suit under section 3–505 rather than section 3–502.  But *Battaglia v. Clinical Perfusionists, Inc.*, 658 A.2d 680, 686 (Md. 1995), which defendants cite in support of that proposition, articulates no such rule.  The employer in *Battaglia* timely paid the employee's wages before terminating the employee.  Here, by contrast, there is no dispute that ACI issued the final paychecks after terminating plaintiffs' employment, and plaintiffs further allege that

A.  Ripeness

Defendants first argue that count four must be dismissed because it was not ripe when plaintiffs filed suit.  If an employer fails to pay an employee in accordance with sections 3–502 or 3–505 of the Labor and Employment Article, section 3–507.2 of that article permits an employee to bring suit for unpaid wages "after 2 weeks have elapsed from the date on which the employer is required to have paid the wages."  The Adjunct Employees should have received paychecks on January 18, and the Staff Employees should have received their final paychecks on January 25.  Because ACI indisputably failed to meet those deadlines, the statute provided that each group of employees could bring suit two weeks after the missed deadline.  But plaintiffs filed suit prematurely on January 29.

Defendants therefore argue that the court lacks subject matter jurisdiction over the suit and move to dismiss the suit under Rule 12(b)(1).  The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Reno v. Catholic Soc. Serv., Inc.*, 509 U.S. 43, 57 n.18 (1993).  The constitutional aspect of the ripeness doctrine forbids the judiciary to adjudicate controversies that are not yet final or are otherwise dependent on future uncertainties.  *See Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).  But this controversy is now final.  Although the Staff Employees' MWPCL claims were not ripe when they filed the complaint, all plaintiffs' claims are now ripe under Article III of the Constitution.  Plaintiffs insist that ACI has not fully compensated them for the hours they worked before ACI's closure, and that dispute is ripe for adjudication.

B.  Mootness

---

their final paychecks were untimely.  Plaintiffs therefore have properly alleged violations of section 3–502.

Defendants next argue that the claim is moot.  "If an intervening circumstance deprives

the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation,

the action can no longer proceed and must be dismissed as moot."  *Genesis Healthcare Corp. v.

Symczyk*, 133 S. Ct. 1523, 1528 (2013).  Both parties acknowledge that the MWPCL claim is not

moot if plaintiffs are entitled to enhanced damages or attorney's fees.  Section 3–507.2 of the

Maryland Labor and Employment Article authorizes courts to award treble damages and

attorney's fees for certain violations of the MWPCL unless the employer's failure to pay the

employee's wages was attributable to a *bona fide* employment dispute.  A *bona fide* employment

dispute is one in which the employer that failed to comply with the MWPCL's timeliness

requirements had a "good faith basis for doing so" due to a "legitimate dispute over the validity

of the claim or the amount that [was] owing."  *Admiral Mortg., Inc. v. Cooper*, 745 A.2d 1026,

1031 (Md. 2000).

Defendants acknowledge that, insofar as ACI failed to comply with sections 3–

502(a)(1)(ii) and 3–505(a) of the Labor and Employment Article, their delinquency was

attributable to their inability to access the funds in their accounts after the bank froze those

accounts.  A bank freeze is not a *bona fide* employment dispute.  Indeed, it is not a dispute at all,

and defendants' attempts to read the word "dispute" out of section 3–507.2 are unavailing.

Maryland law permits an employer to withhold wages only when there is a good-faith basis for

disputing whether the employer actually owes those wages, and ACI has not and cannot make

any such showing.  Defendants ultimately may be able to establish that plaintiffs should not be

awarded enhanced damages and attorney's fees under the MWPCL, but that is an issue for

another day.  For now, it is sufficient that plaintiffs have properly alleged that they *may* be

entitled to enhanced damages or attorney's fees.  Accordingly, plaintiffs' MWPCL claim is not
moot and will not be dismissed.

### C.  Individual Defendants

The Individual Defendants seek summary judgment on count four because they were not
plaintiffs' employers.  The definition of the term "employer" found in the MWPCL is more
restrictive than the definition of "employer" in the FLSA because "the MWPCL does not contain
a provision that expands employer liability to those acting on behalf of the employer."  *Caseres*,
2012 WL 5250561, at *4 (citing *Watkins v. Brown*, 173 F. Supp. 2d 409, 416 (D. Md. 2001)).
"Courts analyzing the MWPCL have rejected any interpretation that would encompass
supervisors, officers, or other agents acting on behalf of the corporate employer."  *Id.*

The Individual Defendants' motion for summary judgment with respect to count four
therefore will be granted.  There is no evidence that the Individual Defendants had a contractual
relationship with plaintiffs; each Individual Defendant merely acted on ACI's behalf.  It is
immaterial that certain Individual Defendants were the indirect owners of ACI.  Plaintiffs were
employees of ACI, and only ACI can be liable for its alleged violations of the MWPCL.

### D.  Wages Paid in Full

ACI also moves for summary judgment on count four on the ground that plaintiffs' wages
have been paid in full.  Like the allegation concerning overtime, however, that is a disputed fact.
Plaintiffs declare that ACI has not compensated them for all of their wages, vacation time, and
overtime.  Plaintiffs also seek enhanced damages.  As stated above, plaintiffs are entitled to
review the time sheets they submitted to ACI before the court requires them to substantiate their
allegations with proof that their wages were not paid in full, especially given that ACI admits

that it paid several plaintiffs for their scheduled time rather than actual time worked.  ACI's motion for summary judgment on count four will be denied without prejudice.

## IV.    Count Five: COBRA

Finally, defendants argue count five must be dismissed.  Count five asserts violations of the Employee Retirement Income Security Act of 1974, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161.  Plaintiffs do not object to dismissal of count five.  (*See* Pl.'s Opp. at 2.)  Accordingly, count five will be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss or, in the alternative, for summary judgment will be granted in part and denied in part.  The Individual Defendants will be dismissed from count one and will be awarded summary judgment on count four.  Count five will be dismissed.  The motion is denied in all other respects.  A separate order follows.


____August 1, 2013_____                      _____/s/_____
Date                                          J. Frederick Motz
                                              United States District Judge

23